940 So.2d 462 (2006)
Earl Roy BARNHILL, William A. Barnhill, Lance M. Ward, as Personal Representatives of the Estate of Hereford M. Barnhill, Okaloosa Probate Case No.: 03-CP-391-C and Earl Roy Barnhill and William A. Barnhill, Individually, Appellants,
v.
Glen Edward LOWE and Pamela J. Metcalf, Appellees.
No. 1D05-5813.
District Court of Appeal of Florida, First District.
September 13, 2006.
Rehearing Denied October 31, 2006.
*463 Daniel C. Campbell, Crestview, for Appellants.
Thomas P. Crapps of Graham & Crapps, P.A., Tallahassee, for Appellee Glen Edward.
Lowe, and Michael Chesser of Chesser & Barr, P.A., Shalimar, for Appellee Pamela J. Metcalf.
ALLEN, J.
The appellants, heirs of Hereford M. Barnhill and personal representatives of his estate, challenge a summary final judgment in favor of Appellee Glen Edward Lowe adjudging that his claim to 122 acres of real property located in Okaloosa County, Florida, is superior to that of the appellants because Lowe was a bona fide purchaser of this property from Barnhill's grantee, Pamela J. Metcalf. The appellants also challenge the trial court's denial of their motion for summary judgment quieting title in their favor against the claims of Lowe and Metcalf as to a 33-acre portion of this property. Because a plain reading of the deed from Barnhill to Metcalf reveals that this 33-acre portion of the property was never conveyed to Metcalf, and because there were disputed issues of material fact regarding whether Lowe was a bona fide purchaser of the remaining acreage, we reverse the summary final judgment in favor of Lowe in its entirety, and we remand this case with directions that judgment be entered for the appellants as to the 33-acre portion of the property and that title to the remaining property *464 be resolved through further proceedings in the trial court.
In December, 2002, Barnhill executed and recorded a deed conveying the following to Metcalf:
Southeast 1/4 of Section 27-Lots 1 thru 7 located on Old River Road in Baker, Florida. The total amount of acreage per lot is as follows: Lot # 1=10.9392 acres; Lot # 2=11.6388 acres; Lot # 3=11.6281 acres; Lot # 4=11.7264 acres; Lot # 5=23.7210 acres; Lot # 6=10.1370 acres; Lot # 7=10.0213 acres.
It is undisputed that the reference to the seven lots in the deed corresponded to an unrecorded plat in Barnhill's possession at the time. Thereafter, in June, 2003, following Barnhill's death, Metcalf executed and recorded a deed conveying the following to Lowe:
SOUTHEAST 1/4 OF SECTION 27* LOTS 1 THRU 7 LOCATED ON OLD RIVER ROAD IN BAKER, FLORIDA. *TOWNSHIP 4 NORTH RANGE 24 WEST. THE TOTAL AMOUNT OF ACREAGE PER LOT IS AS FOLLOWS: LOT # 1=10.9392 ACRES: LOT # 42[sic]=11.6388 ACRES; LOT # 3=11.6281 ACRES; LOT # 4= 11.7264 ACRES; LOT # 5=23.7210 ACRES; LOT # 6 = 10.1370 ACRES; LOT # 7 =10.0213 ACRES.
The appellants were the plaintiffs in the trial court. In the first count of their complaint, they asserted that a 33-acre portion of the 122 acres claimed by Lowe was conveyed to neither Metcalf nor Lowe. In the second count, they asserted that the conveyance of the remaining acreage to Metcalf was procured through undue influence, that Lowe paid less than full consideration to Metcalf, and that Lowe was on notice of their claims at the time of the conveyance to him. Concluding that all of the 122 acres in dispute were conveyed from Barnhill to Metcalf and from Metcalf to Lowe, and that the undisputed material facts demonstrated that Lowe was a bona fide purchaser for value and without notice of the appellants' claims to the property, the trial court entered summary final judgment in favor of Lowe and against the appellants as to both counts of their complaint.
Although the trial court accepted Lowe's argument that the deeds from Barnhill to Metcalf and from Metcalf to Lowe conveyed the entire southeast 1/4 of section 27, a plain reading of these deeds reveals that they did not. The reference to the southeast 1/4 of section 27 was plainly nothing more than a reference to the general area within which the specifically described lots being conveyed were located. This general reference does not control over the very clear and specific description of the individual lots being conveyed. Because the 33-acre portion of the disputed property for which the appellants sought summary judgment does not lie within any of the specifically described lots, the trial court erred in denying the appellants' motion for summary judgment in their favor as to these 33 acres.
The trial court also erred in its ruling that there were no genuine issues of material fact as to whether Lowe was a bona fide purchaser without notice as to the remaining acreage. It is axiomatic that a grantee who takes title to real property with actual or constructive knowledge of the claims of third parties is subject to those claims. Moyer v. Clark, 72 So.2d 905 (Fla.1954).
In his sworn statements, Lowe asserted that Metcalf approached him and represented that she owned 122 acres of land that she would sell for $40,000. Lowe testified that he agreed to this sum and executed a mortgage in this amount payable *465 to Metcalf, but Lowe testified further that he had retained possession of this mortgage and that the mortgage had not been recorded. He claimed that he had been making payments on the mortgage debt. Lowe denied providing any other consideration for the land, although he represented that Metcalf had separately purchased a vehicle from him (a Lincoln) and that he had later referred her to his step-grandfather, a local attorney, when she told him she needed some legal help. Lowe claimed that he took title to the property without any actual or constructive notice of any possible claim to the property by anyone other than Metcalf.
Metcalf testified in her deposition that before Lowe became involved, a couple offered her $7,000 per acre for one of the lots, but that she was unable to sell the lot because the property was "all tied up in probate." She claimed that she still owned the entire parcel and would try to get this same couple to renew their offer. When asked about the deed in which she had purportedly conveyed this very property to Lowe, Metcalf stated that she contacted Lowe when the probate and "all this other stuff come up," and that he offered to help her "just kind of get all this mess taken care of where I couldyou know, just kind of go on with my life, I reckon." "Just by, you know, helping me get all this stuff taken care of with the land and, I guess, getting mine back."
When Metcalf was asked to detail the understanding she had reached with Lowe, Lowe interrupted Metcalf's deposition and suggested that she go outside and speak with his step-grandfather, who was the attorney then representing both Lowe and Metcalf. She did so, and then, upon returning, stated that Lowe offered to buy the property in exchange for two vehicles (a 1992 Lincoln Town Car and a 1995 Geo Tracker), $40,000 in cash (that would not be paid until "the deal is over and done with"), and some "help." She later explained that the "help" was for Lowe to provide a lawyer for her, and she clarified that she had not yet been paid any money for the property. She also alleged that there was nothing in writing other than the deed that would reflect her agreement with Lowe. She then claimed that she actually had another deal with him, one in which he would return lots four and five to her, "the original lot that I wanted as my own," if she paid for the legal services he had secured. When asked how she was gaining any benefit by selling 122 acres to Lowe for $40,000 after having been offered $70,000 for just one ten-acre lot, she stated, "Well, I guess by [him] paying [attorney]'s fees."
It is apparent that there are serious questions regarding whether the purported conveyance between Metcalf and Lowe was an arms-length transaction in which Lowe acted in good faith and without actual or constructive knowledge that there was a challenge to the validity of Metcalf's title to the property. Metcalf and Lowe do not agree as to the amount and nature of the consideration paid by Lowe for the property. They do not agree as to whether any of the consideration had been paid at the time of the underlying litigation. They do not agree as to whether a mortgage was provided to secure Lowe's obligation to make payment for the property, a mortgage whichif it indeed exists oddly, has never been recorded, and even more oddly, is in the physical custody of the purported mortgagor. And, most importantly, they do not agree as to whether Lowe was aware of problems Metcalf was having regarding the title to the property when the property was purportedly conveyed from Metcalf to Lowe. Lowe claims that he knew of no claim to the property by any third party, but Metcalf seems to claim that a significant consideration in *466 her decision to convey the property to Lowe was his promise to help her with her legal problems relating to the property. In light of the genuine issues of material fact revealed by the conflicts between the sworn statements of Lowe and Metcalf, the trial court erred in entering summary final judgment for Lowe on the theory that he was a bona fide purchaser of the property.
The summary final judgment is reversed, and this case is remanded with directions that judgment be entered in favor of the appellants as to the first count of their complaint and that the second count of their complaint be reinstated.
KAHN, C.J., and BARFIELD, J., concur.